## C. O. MANSUR, Respondent v. HALE LENTZ, Appellant.

### Kansas City Court of Appeals, April 7, 1919.

1. **SLANDER AND LIBEL: Defense: Truth of Charge.** In an action for slander if defendant proves the truth of his charges, it is a complete defense.

Mansur v. Lentz.

2. ———: **Treasurer: Using Public Money: Embezzlement.** The treasurer of a town deposited the town funds in a bank in his own name and used the money in his private business. It was *held* that he was guilty of embezzlement under section 4556, R. S. 1909, and that it was not slander to speak of his conduct.

3. ———: **Intent: Violation of Statute Knowingly.** While there must be an intent to commit a crime in order to make the offense of embezzlement, yet if a public officer knowingly and intentionally violates a statute in relation to the use of public money for his private business, the intent appears.

4. **STATUTES: Conversion: Feloniously.** When an officer intentionally violates a statute forbidding the conversion of public money by using it for his private business, he does it feloniously or fraudulently.

5. ———: **Knowledge: Habitual Use.** A town treasurer, with the knowledge of the Aldermen, had knowingly and habitually used the public money in his private business. It was *held* that this did not excuse his violation of the statute, in relation to the conversion of the public funds.

Appeal from Ray Circuit Court.—*Hon. Frank P. Divelbiss, Judge.*

REVERSED.

*M. M. Milligan, Jacobs & Henderson* and *Garner, Clark & Garner* for respondent.

*J. L. Farris, Jr. & Sons* and *Lavelock & Kirkpatrick* for appellant.

ELLISON, P. J.—Plaintiff's action is for slander. He charged in the several counts of his petition that defendant wilfully and maliciously spoke of him the following false, defamatory and slanderous words, to-wit: "To E. M. Chase; 'Mansur has spent the town's money and he could be sent to prison for it.' To D. W. Stratton: 'Ote Mansur has done enough that I could send him to the pen.' To E. W. Kimbrough; 'Kimmy, ain't you on Ote Mansur's bond? You had better get off. He is embezzling the town's money.' To Charles Stapp; 'Mansur has embezzled the town's money and the rest of them are trying to protect him. I have

got the dope to send all of them to the pen and I am going to start up a little Terre Haute.'' These charges had reference to plaintiff's use of public money in violation of section 4556, Revised Statutes 1909, and was so understood by the persons to whom the charges were addressed. The facts in the case are either admitted by the parties or else so conclusively shown as to become indisputable. The words were spoken of plaintiff in the year 1916. At that time he was treas-urer of the town of Hardin in Ray county and had been for a number of years prior to speaking of the' words. Others had held the office, at different times, but principally it was occupied by plaintiff. While holding the office, including the year 1916, plaintiff used the public money received by him as treasurer, in his own business as a merchant in the town. When he quit the office, in February, 1916, he was instrumental in the appointment of his son, who was his partner in the mercantile business, as his successor. At this time there was near $800 due from him as treasurer, but nothing was paid thereon. Mr. Beery was appointed treasurer in May, 1916, in place of plaintiff's son who had removed from the town. Mr. Beery stated that he did not know when he was made treasurer, but that he took charge ''about July, 1916,'' and that he did not know whether he succeeded plaintiff or his son. That plaintiff gave him his personal check for $772 dated the 11th of July, 1916, as the sum due the town. Defendant offered to show that plaintiff borrowed the money with which he settled with Mr. Beery and upon which this check was based. Plaintiff objected and the offer was refused by the court as being immaterial.

If defendant's statements concerning the plaintiff upon which this action is based were true, the action must fail; for it is the law that if it appears that defendant spoke the truth, it is a complete defense. [See, 1838, R. S. 1909; Ukman v. Daily Record, 189 Mo. 378, 395; McCloskey v. Pulitzer Pub. Co., 152 Mo. 339, 348.]

It must be conceded that the words used by defendant, when applied to plaintiff as treasurer of the town, constituted an accusation of embezzlement. Therefore for the defense to suceed, it must appear that plaintiff committed that crime as it is known and defined by the law. The statute (Sec. 4556, R. S. 1909) applicable reads as follows: "If any officer . . . agent or servant of incorporated cities and towns . . . shall convert to his own use, in any manner whatever or shall use by way of investment in any kind of property or merchandise, or shall make way with or secrete any portion of the public moneys, or any moneys that may have come to him or them by virtue of his or their office or official position, or by virtue of any trust reposed in him or them . . . shall upon conviction, be punished in the manner prescribed for stealing property of the kind or the value of the article so embezzled, converted, taken or secreted."

From the facts stated above relating to what plaintiff did, it is manifest that he violated that statute. Plaintiff's counsel state in this court that it was "admitted at the trial that, as treasurer, he deposited the town's money in his own name and used it in his individual business." It was further conceded that this was in violation of the statute, yet by a singular course of reasoning it is nevertheless claimed that though he intentionally committed the forbidden acts which constitute the crime, he did not commit the crime. The foundation for this claim is that embezzlement cannot be committed without an intent to commit a crime and that if plaintiff did not so intend, it was false and slanderous to say that he committed the acts which make the crime. It is true that intent is necessary to constitute the crime of embezzlement (State v. Pate, 268 Mo. 431) but plaintiff's error lies in the place to which he seeks to apply such intent. He desires to consider the intent as an indefinable something showing a dishonest and corrupt heart, whereas, in fact, the intent relates to his having knowingly and intentionally, committed the forbidden acts; when he has done that, the

crime is complete. If he has committed the acts inad-
vertently—unknowingly—as if, for instance, he, by
some accidental, or unintended, means, had mixed the
public funds with his private account, there would be no
intent and a crime would not be made out. But to say
one may intentionally do a forbidden act, made criminal
by statute, and yet claim he did not intend to commit
a crime is to nullify the statute making the act a crime.

In State v. Silva, 130 Mo. 440, 463, quoted and ap-
proved in State v. Lentz, 184 Mo. 241, it is said that
"when an act forbidden by law  is intentionally done the
intent to do the act is the criminal intent which imparts
to it the character of the offense, and no one who
violates a law, which he is conclusively presumed to
know, can be heard to say he had no criminal intent in
doing it." This statement is repeated in State v. King,
86 N. C. 603, 606, the court adding that: "a party
cannote excuse himself for an act intentionally done
and which is a violation of law, by saying he did not
so intend."

In this connection we quote from State v. Manley,
107 Mo. 364, 370. In speaking of the effort of the
Legislature to prevent the tendency of officers to use
public money for their private purposes, the court
said: "To accomplish this purpose, it was deemed
best to say to officers and trustees, you shall not con-
vert to your own use in any manner whatever the
moneys you have received by virtue of your public trust.
Your good intentions will not restore these moneys after
your investment has proved disastrous. It matters not
that in many cases you honestly think you can safely
invest the public funds and will be able to restore them
when called for. They were not placed in your hands
for such a purpose. To save you from dishonor, your
sureties from bankruptcy and loss, we will deter you
from attempting such a proceeding. Experience justi-
fied the Legislature in coming to this conclusion."

Protection for the orphan and bank depositor is
a part of the object of the statute involved here and
it would be a bold proposition that in a prosecution

against a guardian, or bank officer, who had used the trust fund in his private investments, he could claim that his intentions were benevolent and he intended to return the money.

Referring again to plaintiff's charge that defendant falsely and slanderously accused him, he says, in effect, that while he converted the public money to his own use and invested it in a mercantile business, yet he did not do so feloniously or fraudulently. Granting that the conversion must be done feloniously or fraudulently (State v. Pate, 268 Mo. 431) yet his own admission of what he did is a confession that he did it feloniously or fraudulently, intending to use the money for his own private gain. For the words "feloniously," and "fraudulently," used in connection with an unlawful and forbidden act, only mean that the act was done knowingly and purposely, not accidently or by mistake. And so it is said in the case just cited (p. 441) that: "The felonious or otherwise fraudulent intent is an essential element, yet, if a man commits the act of embezzlement the presumption is that he means to embezzle."

Again plaintiff claims that though he did the acts we have stated, yet he did not mean to convert the money. But here again he fails. A sane man should not be allowed to say he did not mean to do what he knowingly and purposely did. He knew the statute forbid him doing what he did for he is conclusively presumed to know. [State v. Silva, 130 Mo. 464, supra.] It is true that one may convert money and be free of criminal intent (State v. Pate, supra, p. 438), for he may claim it in good faith; but he cannot knowingly appropriate public money in his charge to his own use, in the face of the statute, and claim that in such conversion he had no intention to commit a crime.

Finally, it is claimed that plaintiff had been treasurer of the town for several years and that he had always used the money for his private business purposes, and that the members of the Board of Aldermen knew that he had done so. We think this

cannot be allowed as an excuse. The statute cannot be set aside by the town officials. Its very object was to control and govern them and it contains no proviso that it may be set aside at convenience.

This case is a striking example of the length astray to which plaintiff's position would lead. While the record shows that he and different Aldermen of the town of Hardin are reputable citizens and men of high character who enjoy the respect and confidence of their fellow citizens, yet it also shows that he was a merchant and that he used the public money which he held as treasurer in his mercantile business. That occupation is more or less hazardous. Suppose his business had gone wrong and he had become insolvent and the town had lost its money, could any one have been found to say that he had not made himself liable under the terms of the statute? Defendant's demurrer to the evidence should have been sustained.

The judgment must be reversed. All concur.