James **BROWN** and Elma Brown, his wife, Plaintiffs-Appellants,

v.

Lloyd G. **BRIGGS** and Juanita Briggs, his wife, Defendants-Respondents.

No. 10667.

Missouri Court of Appeals, Springfield District.

April 25, 1978.

Motion for Rehearing or to Transfer Denied May 17, 1978.

James E. Reeves, Ward & Reeves, Caruthersville, for plaintiffs-appellants.

Weber Gilmore, Gilmore & Gilmore, Sikeston, for defendants-respondents.

Before BILLINGS, C. J., and HOGAN and TITUS, JJ.

BILLINGS, Chief Judge.

This is an appeal from a jury verdict in favor of Lloyd Briggs on his counterclaim for libel. The jury awarded him $5,000 actual damages, no punitive damages. The trial court entered judgment in accordance with the verdict, denying the Browns' motion for judgment notwithstanding the verdict. We reverse and remand with directions.

The controversy arose after the Browns brought suit on a note executed by Mr. and Mrs. Briggs in connection with the sale of the Browns' Sikeston, Missouri, restaurant to them. After several delays in the trial proceedings, the case was set for trial October 26, 1976. When Briggs got an extension, the Browns paid for the following article to be published in the Daily Standard, a Sikeston newspaper, on November 9, 1976.

"SUING THE JUDGE IS ONE THING: GETTING HIM TO COURT IS ANOTHER THING:

Magistrate Judge, Lloyd G. Briggs, of Scott County gets 60 days extension from court proceedings against himself due to poor health. Yet he continues to try and judge others in his own court.

In case *James and Elma Brown vs. Lloyd and Juanita Briggs* has been 1½ years on the court docket with at least four postponements. In 1974 Judge Briggs of Scott County purchased from the Brown's "Two Tony's Smorgasbord" signing a note agreeing to pay said amount for the business.

He has failed to pay the note and after a year and a half, finally getting court date set for Tuesday, October 26, 1976 to try the Judge, he gets a statement from a local physician that he is unable to stand trial against himself due to poor health. Yet he continues his duties as judge, trying and judging others.

If his health is too poor to stand judgment against himself, then wouldn't one wonder just how he is then capable and able to pass judgment on other citizens in his own court?

Give this some thought, will you???"

Briggs in his counterclaim declared the article was "false, malicious and libelous" and was "willfully, wantonly and maliciously published." The article was claimed to be false because the extension was granted due to the fact that Briggs was having problems stabilizing his blood pressure, not poor health, and that a letter from his phy-

sician made no allusion to general poor health.[1] A second misstatement according to Briggs was that there were five postponements instead of four. Thirdly, the note was alleged to have been given for an oral covenant not to compete rather than to purchase the restaurant. The Browns denied these assertions, sought a dismissal of the counterclaim for failure to state a cause of action and raised the defenses of truth and privilege.

Truth is a complete defense to charge of libel. If the facts stated are shown to be true, no defense of privilege is necessary. *Pulliam v. Bond,* 406 S.W.2d 635 (Mo.1966); *Warren v. Pulitzer Publishing Co.,* 336 Mo. 184, 78 S.W.2d 404 (1934); *Cash v. Empire Gas Corp.,* 547 S.W.2d 830 (Mo.App.1976). In defending on the basis of truth, it is not necessary that the precise facts stated in the article be literally true. "Slight inaccuracies of expression are immaterial if the defamatory charge is true in substance." *Kleinschmidt v. Johnson,* 183 S.W.2d 82, 86 (Mo.1944); *see also, Turnball v. Herald Company,* 459 S.W.2d 516 (Mo.App.1970).

The test to be applied in determining the accuracy of the Browns' newspaper article concerning the extension granted Briggs, is whether the article is substantially true. There is no dispute that Briggs was the magistrate judge for Scott County, and that he and his wife had contracted to purchase Two-Tony's restaurant from the Browns. There is also no doubt that the Browns brought suit July 26, 1975, against the Briggses on the note executed in connection with the sale and that the case was set for trial October 26, 1976.

All other statements in the article were admitted to be true by Briggs in his testimony. He testified that the note was "part of what we paid for Two-Tony's" and that he and his wife owed on the note.[2] Both Briggs and his attorney admitted Briggs got a 60 day extension of the trial based on a letter from his physician and that his health gave rise to the postponement. By Briggs' own admission, it was established that he conducted magistrate court October 26, 1976. He also admitted he had continued to regularly perform his magistrate court duties after that date.

The truth of the article having been admitted by Briggs, the evidence did not sustain his case. The trial court should have sustained the Browns' motion for a directed verdict at the conclusion of the evidence. The judgment is reversed and the case is remanded with directions to enter judgment for the Browns in accordance with their motion for directed verdict.

It is so ordered.

All concur.

---

1. The letter from Briggs' personal physician stated, "Mr. Lloyd G. Briggs is under treatment for hypertensive vascular disease and is having headaches related to a sinus condition. It is my recommendation that he not be involved in any litigation for sixty days."

2. Mr. and Mrs. Briggs amended answer admitted the note was executed as part of the purchase price and that $14,000 was owed. They amended this answer by interlineation at the time of the trial, admitting $1,900 was owed. The jury awarded the Browns $18,000. See: *Brown, et ux. v. Briggs, et ux.,* 559 S.W.2d 768 (Mo.App.1977).