Dwight CLASPILL, on behalf of himself and all other members of International Association of Fire Fighters, Local No. 152, AFL–CIO, Plaintiffs-Respondents,

v.

J. Ray CRAIG, Ray Edward Fraker, Charles Grant, Robert G. Harris, Harry Lassley, Richard Mann, John R. Martin, Lloyd W. Newman, Ray G. Nichols, William T. Penland, Clifford Pickett and George D. Tillman, Defendants-Appellants.

No. 10606.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 30, 1979.

Donald W. Jones, Gary T. Nelms, Jones, Karchmer, Nelms & Sullivan, Springfield, Rex H. Reed, Fairfax, Va., for defendants-appellants.

Charles C. Shafer, Jr., Kansas City, for plaintiffs-respondents.

HOGAN, Judge.

This appeal is the upshot of a long-standing controversy between plaintiff Claspill, representing the rank and file, and defendants, as supervisory employees, concerning the propriety of defendants' membership in local No. 152, International Association of Fire Fighters, AFL–CIO (local 152). All the parties are, or have been employees of the Springfield City Fire Department, and it is inferable that at one time or another, most of the defendants have been members of local 152.

The dispute which was litigated grew out of the local's decision, in 1969, to institute a "slowdown" and demonstration in aid of negotiations conducted with the city of Springfield. The defendants insist there was a "strike"; plaintiff denies that any strike vote was ever taken. In any case, some sort of "slowdown" occurred, for on September 4, 1969, only 14 firemen reported for duty. At least one of the defendants participated in the job action, but several were disciplined by the union for failure "to live up to the obligation of Local # 152" in the demonstrative action.

Following a meeting with city officials in February 1970, all the defendants who had been members of local 152 resigned or attempted to resign their memberships in local 152 because they believed membership in a union was incompatible with the nature of their duties and their obligation to the city of Springfield. Some of the resignations were accepted; others were refused for one reason or another.

Thereafter, according to their testimony, the defendants were subjected to various indignities which they regarded as retaliatory harassment by local 152. This harassment was intensified after the union began publishing a notice (to which defendants refer as an advertisement) in the Union Labor Record, a trade union publication. This advertisement or notice advised readers of the Union Labor Record that the defendants were members of the Springfield City Fire Department but were not members of local 152. The notice was first published in July 1970 and thereafter appeared sporadically in the Union Labor Record up to the time of trial in October 1973.

The defendants testified to various forms of harassment. Defendants Nichols, Mann and Fraker testified they received anonymous telephone calls at all hours; some of the calls were obscene, and some of the defendants considered them threatening. The defendants were unable to identify the antiphonal speakers. Defendant Nichols testified that a copy of the notice, or ad, was posted on the bulletin board at his fire station with derogatory comments scrawled on it. Other indignities, insults and annoyances were visited upon other defendants. Such is the general background of the controversy up to the institution of this action in May 1972. We have by no means recited all the background facts nor set out the testimony in detail, but what we have noted is sufficient for the purposes of this memorandum.

In 1972, this action was commenced in the Circuit Court of Greene County by plaintiff Claspill on behalf of local 152 as an unincorporated association. The substance of the petition is that in 1969, the union brought an action against the city of Springfield "to recover damages from the City   .   .   .

for certain monies due to Springfield Fire Fighters for additional compensation due to them because of the City's erroneous computation of 'holiday time' "; that the action was compromised and as a result all members of the fire department received additional vacation time in 1971. Further, it was averred that as a result of the compromise, each defendant received benefits, but refused to bear a proportionate share of the legal costs and expenses incurred in securing those benefits. Prayer of the petition was for judgment severally against each defendant in the amount of $638.50, plus interest and costs.

At this point, the action became very complex. The defendants filed an incredibly prolix responsive pleading consisting of an answer and a counterclaim in two counts.[1] The counterclaim, given most favorable intendment, averred: 1) An abuse of process in prosecution of the plaintiff's cause, and 2) invasion of defendants' privacy by publication of the notice in the Union Labor Record. Defendants also requested injunctive relief from the alleged invasion of privacy. Prayer of the first count of the counterclaim was for $120,000 actual and $600,000 punitive damages; prayer of the second count was for injunctive relief, and for actual damages in the amount of $120,-000 and punitive damages in the amount of $600,000.

The trial court heard the evidence of 21 witnesses and received some 138 pages of exhibits. The cause was then submitted to the jury as follows: 1) Plaintiff's claim for reimbursement was submitted; 2) defendants' counterclaim for abuse of process was submitted upon the general hypothesis that the purpose of plaintiff's action was to compel the defendants to join or pay member-ship fees to local 152, or to intimidate the defendants; 3) defendants' claim of invasion of privacy was submitted upon the general hypothesis that publication of the ad constituted an invasion of their privacy, and 4) the request for injunctive relief was submitted to the court.

The jury found: 1) Against the plaintiff; 2) for the defendants upon their claim of abuse of process, assessing defendants' damages at $500 per defendant, and 3) against defendants upon their claim of invasion of privacy. The trial court denied injunctive relief. Both parties then appealed to this court. Plaintiff dismissed his appeal. This court dismissed defendants' appeal as premature because the judgment did not dispose of all the parties. Upon remand, the trial court corrected its judgment and defendants again appealed.

By the corrected judgment appealed from, the trial court: Sustained plaintiff's motion for new trial on Count I of the counterclaim (for abuse of process) because: a) The damages awarded on Count I were not supported by the evidence as to any defendants; b) defendants' verdict-directing instructions 4 through 15, inclusive, were erroneous; and c) instruction 56, defendants' measure of damages instruction applicable to Count I, was prejudicially erroneous. Defendants' alternative motion for judgment n. o. v. or for a new trial upon Count II of their counterclaim was denied. Injunctive relief from the invasion of privacy alleged in Count II was denied.

■ On this appeal, defendants have briefed and argued five points. Points four and five assign error to the trial court's refusal to grant defendants' motion for judgment n. o. v. or a new trial and its

---

1. The counterclaim runs to 14 record pages. A sample subparagraph: ". . . the present action [has been filed] for the purpose of violating the rights of defendants under Article I, Section 2 of the Missouri Constitution of 1945, which guarantees that all persons shall have the natural right to life, liberty and the pursuit of happiness and the enjoyment of the gains of their own industry; and the petition herein seeks to interfere with those rights and to otherwise infringe the civil liberties of the defend-ants as guaranteed under other provisions of the Missouri and United States Constitutions, including the guarantee that each defendant have the freedom to associate or not associate with any group of individuals, defendants relying expressly upon Article I, Section 10; Article I, Section 29 of the Missouri Constitution of 1945; and the First, Fifth, Nineth [sic], and Fourteenth Amendments of the United States Constitution."

refusal to grant injunctive relief on Count II of the counterclaim, which alleged an invasion of privacy. The point directed to the denial of defendants' alternative motion for judgment n. o. v. or for new trial is inadequately stated, but upon discretionary consideration, we find it to be without merit. Defendants' contention that they were entitled to injunctive relief as a matter of law is likewise without merit. An action for tortious invasion of privacy by public disclosure presupposes the disclosure of private facts which would bring shame or humiliation to a person of ordinary sensibilities. *Corcoran v. Southwestern Bell Tel. Co.,* 572 S.W.2d 212, 214–215[3] (Mo.App. 1978). If, as the defendants contend, they have an absolute legal right to refrain from joining local 152, there is nothing in the "ad" or notice which would bring shame or humiliation to a person of ordinary sensibilities.

■ The other three points briefed are directed to the order granting plaintiff a new trial on Count I of defendants' counterclaim, which alleged abuse of process. One of the grounds upon which a new trial was granted was that "the damages awarded on Count I of the counterclaim are not supported by the evidence as to any defendant." The defendants construe this ground as a ruling that the evidence was insufficient as a matter of law to warrant an award of $500 to every defendant. We agree with this construction and with the trial court's ruling. Of greater importance is plaintiff's response that the defendants proved no damages whatever. If that were true, defendants would be entitled to no relief because proof of some damage is necessary to recover for an abuse of process. *Stafford v. Muster,* 582 S.W.2d 670, 678[13] (Mo.banc 1979); *National Motor Club of Missouri, Inc. v. Noe,* 475 S.W.2d 16, 24 (Mo.1972). Although we agree that the evidence does not warrant the award of $500 to each defendant, we cannot say there is no evidence whatever of compensable damages. Defendants' damage evidence had probative value, even though it was sketchy and vague. There is evidence that the defendants had lost some time and had suffered some inconvenience because plaintiff's action was instituted; considering the whole record, the evidence is at least sufficient to support a nominal award of actual damages. Plaintiff does not otherwise question the submissibility of Count I of the counterclaim and we decline to consider it sua sponte.

■ As noted, the order for new trial on Count I of defendants' counterclaim was based on two additional grounds. They need not be considered nor discussed. The rule is that if any ground advanced in support of a new trial is demonstrably correct, the order should be affirmed. *State ex rel. State Highway Commission v. Klipsch,* 414 S.W.2d 783, 786[4, 5] (Mo.1967); *Vaughn v. Ripley,* 446 S.W.2d 475, 479[5] (Mo.App. 1969). No error of law appears, and the judgment is affirmed pursuant to Rule 84.-16(b), V.A.M.R.

All concur.