Albert W. LINKOGEL,
Plaintiff-Appellant-Respondent,

v.

BAKER PROTECTIVE SERVICES, INC.,
Debbie S. Parashak, Gilbert Kleink-
necht, Defendants-Respondents,

Steve Rogers and Kevin Stewart,
Defendants-Respondents-Appellants.

Nos. 42547, 42548.

Missouri Court of Appeals,
Eastern District, Division Two.

Oct. 27, 1981.

Motion for Rehearing and/or Transfer
to Supreme Court Denied Dec. 16, 1981.

Charles J. McMullin, St. Louis, for plaintiff-appellant-respondent.

Evans & Dixon, Ralph C. Kleinschmidt, St. Louis, for Baker Protective and Parashak.

Whalen, Danis, Tobben & Murphy, David O. Danis and Samuel B. Murphy, Jr., St. Louis, for Kleinknecht, Rogers and Stewart.

WEIER, Judge.

This case comes to us in a civil action brought by Albert W. Linkogel against a multitude of defendants in an eight-count petition. The defendants are (1) Baker Protective Services, Inc., the parent company of Wells Fargo and a subsidiary of Borg-Warner Corporation; (2) Debbie S. Parashak, a "mobile patrolman" for Wells Fargo; (3) Gilbert Kleinknecht, superintendent of the St. Louis County police department; (4) Steve Rogers, a detective for the St. Louis County police department; and (5) Kevin Stewart, a patrolman for the St. Louis County police department.[1] The tortious conduct alleged to have been committed against the plaintiff, as stated in the petition, consists of false arrest, malicious prosecution and abuse of process, slander, assault and battery, failure to train police personnel, use of excessive force and commission of an unreasonable search and seizure in violation of 42 U.S.C. § 1983, deprivation of "equal protection of the laws or of equal privileges and immunities under the law" in violation of 42 U.S.C. § 1985 and a violation of Missouri's "Sunshine Law," § 610.100, RSMo 1978, due to the failure of the St. Louis County police to close and expunge the arrest record of the plaintiff. The briefs on appeal are voluminous, containing myriad points. We reverse as to some claims and affirm as to others. For the sake of coherence we shall refer to Mr. Linkogel by his name or as plaintiff and to the defendants below by their names.

Plaintiff's causes of action arise from an incident that occurred on his property on May 26, 1977. Mr. Linkogel has owned and operated Link's Nursery, Inc., at 11520 Conway Road in the Village of Westwood in St. Louis County for thirty years. The activities carried on as part of this business include the sale of golf course and lawn equipment, golf carts and the sale of grass-sod which is grown on the premises. The

---

1. St. Louis County was originally the sixth defendant but the action as to it was dismissed by plaintiff.

plaintiff also rents and services golf carts at nearby country clubs. He picks them up in the evening so he can service the carts and deliver them to various clubs the next day. When he engages in this activity he employs the use of an eighteen-wheel trailer that he drives over a private dirt road on his property. Because there has been a new home recently constructed adjacent to his property, he was adamant about restricting the use of this road to the eighteen-wheeler while transporting golf carts, so as not to stir up dust and with it the ill will of his new neighbor. Plaintiff also explained that cars operating on the dirt road would travel upon the adjacent zoysia grass thereby burning it and rendering it unmerchantable.

On May 26, 1977, the plaintiff and his three sons had returned with some golf carts from a local club in order to service them for the following day. As they entered plaintiff's property from the service road off of U. S. Highway 40, they observed a Wells Fargo car leaving on the proscribed dirt road.[2] It was about 8:30 or 9 p.m. The truck was clearly marked with decals bearing the name of the business and a golf course logo. When the plaintiff pulled onto the dirt road, the Wells Fargo car pulled alongside of the truck. During a brief conversation the plaintiff identified himself and made it clear that he did not want the road used. The Wells Fargo guard responded that he didn't care who the plaintiff was and that he would discuss the situation with his superior. The Wells Fargo guard then left and the plaintiff went about his business unloading and servicing the carts. He then called his wife to pick up his sons. Around 10 p.m. another car pulled up, this one driven by the defendant Debbie Parashak, a Wells Fargo supervisor. Words were exchanged, Linkogel making it clear that he did not want her in there and Parashak responding that the "village pays us to ride in this area and I don't give a blank who you are, we're going to come in here." She then left the property of the plaintiff.

The next event that occurred on that evening was the arrival of two cars through the back dirt road. One of the vehicles was operated by Parashak while the other was a St. Louis County police car occupied by defendants Stewart and Rogers. Mr. Linkogel told them he "did not want them driving in and out of here." Officer Stewart then asked Linkogel if he had any weapons and began to "pat him down." The plaintiff responded that he had no concealed weapons on his person and stated that he was on his own property. Mr. Linkogel did have a rifle in his car which he and his sons had been using for target practice, but from the record it appears to have been in full view, illuminated by the dome light from his car. Parashak directed Rogers' attention to the gun by pointing to it and at this point Rogers informed the plaintiff that he was "under arrest for a concealed weapon." The plaintiff was then seized by Rogers, had his arms twisted behind his back, and was thrown over the fender of the car onto the trunk where he was handcuffed. He was then conveyed to the county police holdover at Westport where he was denied use of the telephone or the bathroom. Later he was taken to the county police headquarters in Clayton where he was booked and fingerprinted. At 5:15 a.m. he was told he was free to go. Plaintiff then called a taxi that took him home.

We shall consider the cross appeals by parties discussing additional facts that are germane to the points on appeal.

## I. Debbie Parashak and Baker Protective Services, Inc.

The issues involving these two defendants are discussed at the same time because Baker Protective was sued on a respondeat superior theory. Plaintiff Linkogel appeals from the direction of verdicts for Baker and Parashak on Counts I (false arrest), IV (assault and battery) and Count VI (use of excessive force in violation of 42 U.S.C. 1983). While the reasons for the court's action being error are advanced in many

2. Westwood Village contracted with Wells Far-
go for security services.

points, the thrust of Linkogel's contentions is that Parashak instigated a false arrest and with it the assault and battery and the use of excessive force by being the "moving party" who summoned the police onto the plaintiff's property, pointed at the gun in the car and was present during the arrest and assault. Defendants Parashak and Baker contend that the directing of the verdict for them was proper because Mr. Linkogel failed to prove that Parashak had instigated the arrest. We reverse and remand as to Baker and Parashak.

■ In deciding whether a submissible case has been made by the plaintiff, we view the evidence in a light most favorable to the plaintiff giving him the benefit of all inferences which may be reasonably drawn from the evidence in support of his cause of action. *Smith v. Allied Supermarkets, Inc.,* 524 S.W.2d 848, 849 [1] (Mo.banc 1975). Substantial evidence must be produced to support the plaintiff's claim. *Bergel v. Kassebaum,* 577 S.W.2d 863, 867 [3] (Mo. App.1978).

■ If the facts of the case, viewed in a light most favorable to the plaintiff, had shown that Parashak only gave wrong information, the trial court would then have been correct in directing a verdict in this defendant's favor because to be culpable for a false arrest, when the actual arrest was conducted by another, the defendant must have *instigated* the arrest by suggestion and encouragement and countenanced it. *Conley v. Commerce Bank of St. Charles,* 599 S.W.2d 48, 50 [2] (Mo.App.1980); *Wehrman v. Liberty Petroleum Company, Inc.,* 382 S.W.2d 56, 61 [4] (Mo.App.1964). A fixed test has not been established to determine what constitutes "instigation." Therefore, each case must be determined on its own set of facts. *Conley, supra* at 50 [2]; *Gerald v. Caterers, Inc.,* 382 S.W.2d 740, 744 [12] (Mo.App.1964). The instigation may be shown by either direct or circumstantial evidence. *Smith v. Allied Supermarkets, supra* at 852 [2].

■ Looking at the facts of this case we believe the plaintiff has made submissible cases on the counts here discussed where motions for directed verdict were sustained. His evidence tends to show that Parashak radioed her dispatcher to contact the police and have them meet her just outside of plaintiff's property. Having knowledge that plaintiff claimed to be the owner of the land where she and her subordinate had driven and had warned them not to re-enter, without any investigation of the facts as to identity of plaintiff and his possessory interest in the land, she summoned the police and told them that the plaintiff was "a belligerent white male." The police then followed her onto his land where they stopped and got out of their car. It was at this time that the plaintiff drove up, stopped his car and got out to talk to them. As he had left his car door open, the dome light illuminated the .22 caliber rifle sitting with its butt on the floor of his car and its barrel clearly visible through the windows and open door. Parashak saw this and she pointed to it motioning Rogers over to the plaintiff's car. It was then that the arrest occurred.

■ The threshold determination we are called on to make is simply whether or not the actions of Parashak amount to an "instigation." "Instigate" means to stimulate or goad into action, and one of its synonyms is "abet" which means, in law, to aid, promote or encourage the commission of an offense. *Wehrman v. Liberty Petroleum Company, Inc., supra* at 56, 61 [4]. We think it logical that the jury could find and infer that Parashak could expect after bringing the police onto the property to investigate the "belligerent white male" and directing their attention to the rifle that the police would then take action, as they in fact did, against the plaintiff. In other words, by her actions the jury could infer she "stimulated, promoted or encouraged" the arrest and thus instigated it. *See Knupp v. Esslinger,* 363 S.W.2d 210 (Mo. App.1962). The legality of the arrest is a question for the jury to decide, but having made out a prima facie case of false arrest, plaintiff was entitled to go to the jury with the question of instigation by Parashak and the trial court erred in directing a verdict in

Parashak's favor. Since Baker Protective is her principal, it follows that the directed verdict as to it on Counts I, IV and VI must likewise be reversed.

Defendants Baker Protective and Parashak were granted a directed verdict as to Counts II and III and no appeal was taken as to those counts. Count V is inapplicable to these defendants. Count VII was dismissed as to all defendants and Baker and Parashak were not charged under Count VIII. We now turn our attention to the next party.

## II. Gilbert Kleinknecht

Defendant Kleinknecht is the Superintendent of Police in St. Louis County. Plaintiff appeals from the directing of verdicts in favor of defendant Kleinknecht on Counts I, IV, V, VI and VIII. The thrust of the appeal is threefold. First, he contends that Kleinknecht is liable for the wrongful acts of his subordinates under a derivative or vicarious liability theory. His second contention is that Kleinknecht is liable under Count V for failure to properly train his subordinates. Finally he contends that Kleinknecht is liable under the "Sunshine Law"[3] for failing to expunge the record of Linkogel's "false arrest." We find Linkogel's arguments to be without merit and affirm as to Kleinknecht.

▪▪▪ In support of his contention that Kleinknecht is liable for the acts of his subordinates, plaintiff cites a series of cases which hold that a sheriff, an elected officer, is liable for the acts of his deputies. These cases are readily distinguishable from the present situation. Mr. Kleinknecht is not a sheriff. He is the Superintendent of Police in St. Louis County and as such is a hired employee of the St. Louis County Board of Police Commissioners. The sheriffs of this state, conversely, are empowered to appoint their deputies by § 57.201.1, RSMo 1978. They are his agents who "hold office at the pleasure of the sheriff." § 57.201.2, RSMo 1978. Police chiefs are not responsible for the acts of their subordinates unless the chief or supervisor has "directed such acts to be done, or has personally cooperated in the offense...." *Jordan v. Kelly*, 223 F.Supp. 731, 737 [4] (W.D.Mo.1963); *Reimer v. Short*, 578 F.2d 621, 625 [2] (5th Cir. 1978), *cert. denied sub nom. Adams v. Reimer*, 440 U.S. 947, 99 S.Ct. 1425, 59 L.Ed.2d 635 (1979). Neither may they be held vicariously liable under 42 U.S.C. § 1983 (Count VI) absent an "affirmative link" with the misconduct. *McClelland v. Facteau*, 610 F.2d 693, 695 [2] (10th Cir. 1979). In the instant case the record is devoid of direction or cooperation in the complained-of conduct.

▪▪▪ The second issue concerning Kleinknecht is the question of his liability for failure to properly train his personnel.[4] The resolution of this issue turns on which party's interpretation of *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979), we accept. In *McClelland* the plaintiff attempted to hold police chiefs liable for failure to properly train and supervise their subordinates. The cause of action arose from a beating received by plaintiff in a jail in New Mexico. While it is clear that such a cause of action does exist, there must be a sufficient "causal connection" or "affirmative link" present in order to hold the supervisor liable. *Id.* at 695, 696 [2]. This requirement is satisfied only by participating or acquiescing in the complained-of deprivation. *Id.* Plaintiff in the instant case asserts that Kleinknecht, by stating in his deposition that he "would have arrested [Linkogel] and charged him with carrying a concealed weapon," met the causal requirement by "acquiescing" in the actions of the officers. We find this interpretation of the language of *McClelland* to be strained, as we interpret "acquiesce" to mean something more than an after-the-fact approval. Furthermore *McClelland* makes it clear that "[s]howing that individual officers violated

3. Sections 610.010–610.115, RSMo 1978, specifically § 610.100. This law has been subsequently amended. Section 610.120, RS Mo. Supp.1981.

4. This is a cause of action authorized by 42 U.S.C. § 1983. *See McClelland v. Facteau*, 610 F.2d, 693, 696 (10th Cir. 1979).

a person's constitutional rights on an isolated occasion is not sufficient to raise an issue of fact whether adequate training and procedures were provided." *Id.* at 697 [4]. Finally, we would point out that the reason summary judgment in favor of the police chiefs was improper in *McClelland* was the fact that there was evidence that the chiefs were on notice of previous rights violations in the New Mexico jail. In the instant case there is no showing that Kleinknecht was adequately put on notice of prior misbehavior. Plaintiff's contentions that Kleinknecht is liable under Count V is without merit.

■ We next turn to the issue of whether Kleinknecht is liable for failure to expunge the arrest record of Mr. Linkogel. We shall discuss the liability of Rogers and Stewart together with that of Kleinknecht on this point.

Missouri has enacted a "Sunshine Law." Section 610.100 applies to the closing and expungement of arrest records. The statute reads as follows:

> "If any person is arrested and not charged with an offense against the law within thirty days of his arrest, all records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records to all persons except the person arrested. If there is no conviction within one year after the records are closed, all records of the arrest and of any detention or confinement incident thereto shall be expunged in any city or county having a population of five hundred thousand or more."[5]

Nowhere in the statute is the person responsible for closing the records designated nor need we decide upon whose shoulders the burden falls.

Plaintiff asserts that a civil remedy for damages exists against the superintendent and the police officers involved. In support of his contention he analogizes to the "Service Letter Statute"[6] which requires corporations to furnish letters to certain persons

leaving their employ stating the reasons for departure. Plaintiff argues that since violation of § 610.100 and § 290.140 incur criminal penalties and since the courts of Missouri recognize a civil remedy for damages for a violation of § 290.140, it logically follows that a civil remedy for damages also must exist for a violation of § 610.100. But under the Service Letter Statute the corporate employer is required to furnish the letter. Here the one to expunge the record is not designated in the statute. This duty must therefore arise from some other statute or law and we are not informed of any that requires police officers to perform this act.

■ Plaintiff's final argument for the existence of a civil remedy for violation of § 610.110 is § 537.050 which provides as follows:

> "In no case shall the right of action of any party injured by the commission of any felony or misdemeanor be deemed or adjudged to be merged in such felony or misdemeanor; but he may recover the amount of damages sustained thereby in an action to be brought before any court or tribunal of competent jurisdiction." Section 537.050, RSMo 1978.

This statute merely preserves any *existing* civil cause of action from extinguishment by an acquittal on a criminal charge. It has no bearing on the issue of whether a civil remedy for damages lies.

For the foregoing reasons the judgment is affirmed as to Kleinknecht on all counts.

### III. Rogers and Stewart

Finally, we turn our attention to the issues concerning police officers Rogers and Stewart. For the reasons previously discussed, they are not liable under Count VIII for failing to expunge Linkogel's arrest record and the judgment favoring them on Count VIII is affirmed.

■ Count III alleges that Linkogel was slandered by Officer Rogers when he stated: "You are under arrest for a concealed weapon." Plaintiff appeals from the directing of a verdict in Rogers' favor.

---

5. Section 610.100, RSMo 1978.

6. Section 290.140, RSMo 1978.

Officer Rogers did not accuse plaintiff of committing a crime. He merely informed him of the charge for which he was being arrested. It was true that the officer was arresting Linkogel on a weapon charge. Truth is a complete defense to a charge of libel or slander. *Brown v. Briggs*, 569 S.W.2d 760, 762 [1] (Mo.App.1978); *Mansur v. Lentz*, 201 Mo.App. 256, 211 S.W. 97, 98 [1] (1919). We need not discuss the grey area of the law of privilege which was briefed and argued by the parties for if the facts stated are shown to be true, no defense of privilege is necessary. *Brown, supra* at 762 [1].

Plaintiff next urges that the trial court erred in granting Rogers and Stewart a new trial as to Count I. The court stated that its reason for granting the new trial was its error in giving Instructions No. 4 and 13 because they allowed plaintiff double recovery whereas the instructions should have been a verdict director against both parties as they were jointly liable. The instructions which were given read as follows:

### "INSTRUCTION NO. 4

Your verdict must be for plaintiff and against defendant Steve Rogers under Count I if you believe:

Defendant intentionally restrained plaintiff against his will, unless you believe that plaintiff is not entitled to recover by reason of Instruction No. 5.

### INSTRUCTION NO. 13

Your verdict must be for plaintiff and against defendant Kevin Stewart under Count I if you believe:

Defendant intentionally restrained plaintiff against his will, unless you believe that plaintiff is not entitled to recover by reason of Instruction No. 14."

We hold that the trial court was correct in granting the motion for new trial of defendants Stewart and Rogers on Count I. We do so for reasons other than those stated by the trial court.

It is true, as plaintiff advances, that nothing in MAI mandates multiple defendants to be joined in one verdict-directing instruction. At least one prior tort action, *Matthews v. Mound City Cab Co.*, 205 S.W.2d 243 (Mo.App.1947), held no error in submitting the question of each defendant's liability in a separate instruction. *Id.* at 251 [18]. It is clear, however, that Missouri's rule as to compensatory damages in tort actions is that "[a]ll who are guilty of participating in the wrongdoing are jointly and severally liable for the whole damage, and the judgment must be in one amount and against all who are not discharged." *State ex rel. Hall v. Cook*, 400 S.W.2d 39, 40 [2] (Mo.banc 1966); *Gilliam v. Hopkins*, 472 S.W.2d 436, 448 [15] (Mo.App.1971).[7] This was not done below as Instruction No. 6, relating to the assessment of damages against Rogers on Count I and Instruction No. 15, relating to damages against Stewart allowed two separate sums to be awarded against the two separate parties. That the jury in fact did find for $5,000 actual damages against each party separately is witnessed by the verdict forms. The use of these multiple verdict forms was objected to by defendants Rogers and Stewart in their motion for new trial. Where as here, if any ground advanced in support of a new trial is demonstrably correct, the order should be affirmed. *Claspill v. Craig*, 586 S.W.2d 458, 461 [5] (Mo.App.1979). Therefore the granting of a new trial on Count I for Rogers and Stewart was proper.

Plaintiff's next complaint of error is directed to the trial court's entry of judgment notwithstanding the verdict for Rogers and Stewart on Count IV. Plaintiff contends that the verdict-directing instructions and the damage instructions under Count IV were non-duplicative and did not cause a double recovery because the two officers "performed different roles in different degrees in assaulting plaintiff." We agree with the finding of the trial court that the recovery would be duplicative for reasons

---

**7.** It should be noted that a jury may assess *Punitive* Damages against joint wrongdoers in differing amounts. *Annbar Associates v. American Express Company*, 565 S.W.2d 701, 710 [6] (Mo.App.1978); *Fordyce v. Montgomery*, 424 S.W.2d 746, 751 [6] (Mo.App.1968).

which we shall state in discussing the cross appeals of defendants Stewart and Rogers from a verdict against them on Count VI. We find it unnecessary to rule on the many other points raised by plaintiff because it is speculative as to whether they will reappear on remand.

## IV. Cross Appeal of Rogers and Stewart

Defendants Rogers and Stewart raise several points in their appeal from the judgment entered upon jury verdicts against them on Count VI—use of excessive force and unreasonable search in violation of 42 U.S.C. § 1983. The jury had assessed damages against each defendant for $5,000 actual and $5,000 punitive damages for a total of $20,000 on that count. The thrust of their contention is that it was error for the court to submit multiple verdict forms to the jury because they allowed the plaintiff multiple recovery for the same damages arising out of a single occurrence. We agree with defendants Rogers and Stewart.

MAI 36.05, applicable at the time of the trial, reads in relevant part as follows:

"If you find the issues in favor of the plaintiff and against both defendants, your verdict may be in the following form:

We, the jury, find the issues in favor of the plaintiff, and against both defendants, and assess plaintiff's damages at $_____ (stating the amount).
_____ Foreman."

What we have stated previously in affirming the granting of a new trial as to Count I against Stewart and Rogers is equally applicable here. The judgment for compensatory damages must be in one amount against all who are not discharged. *Cook, supra* at 40. Furthermore the verdict form quoted above was not followed in that more than one assessment of damages was allowed against the different parties and our cases are clear that deviation from MAI is prohibited.

A case on point here is *Stafford v. Muster*, 582 S.W.2d 670 (Mo.banc 1979). In *Stafford* the plaintiff was taken into custody pursuant to a writ of attachment which the defendants in the case had filed. The causes of action alleged were malicious prosecution, false imprisonment, abuse of process, and a violation of § 1983, *supra*, making that case similar to the one at bar. The court stated that the "petition sets forth several claims stemming from a single set of occurrences with a single series of damages. Should plaintiff adduce sufficient proof of liability at trial, she may recover but once for the injuries she has sustained." *Id.* at 679 [20]. Similarly, on remand plaintiff here may advance all the theories available to him but may only recover one sum as compensatory damages. This is mandated because the false arrest, the assault and battery and the alleged civil rights violations all stem from one single occurrence—the arrest of Linkogel. What damages he may have suffered arise from this one incident and he may not recover multiple damages for them. Plaintiff's reliance on *Quinn v. Rosenberg*, 399 S.W.2d 433 (Mo.App.1966) is misplaced. In that case plaintiff proved separate damages both for (a) a physical assault and (b) a false arrest. There were two separate occurrences with two separate kinds of injuries.

## V. Attorney's Fees Sought by Linkogel

One final issue needs to be discussed. Plaintiff contends he is entitled to an allowance of reasonable attorney's fees. His claim is premised on 42 U.S.C. § 1988, known as the Federal Civil Rights Attorney's Fees Awards Act.[8] This act provides, in relevant part, that in a civil action to enforce 42 U.S.C. § 1983 (among others) the trial court, "in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."[9] This section is applicable in state proceedings brought pursuant to 42 U.S.C. § 1983. *Maine v. Thiboutot*, 448 U.S. 1, 9, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555 (1980).

---

**8.** *Robinson v. City of Raytown*, 606 S.W.2d 460, 462 (Mo.App.1980).

**9.** 42 U.S.C. § 1988.

Plaintiff in his Count I did pray for a reasonable attorney's fee. The trial court entered judgment in plaintiff's favor on Count VI against Rogers and Stewart and specified that they shall recover costs in addition to the amount of judgment. The court did not enter an allowance of attorney's fees. The language of § 1988 clearly leaves the award of attorney's fees to the trial court's discretion. The trial court here did not exercise its discretion in favor of Linkogel. Plaintiff failed to raise the issue of the trial court's omission of an award of attorney's fees in any after-trial motions. Rule 84.13 provides that "no allegations of error shall be considered in any civil appeal from a jury-tried case except such as have been presented to or expressly decided by the trial court." Mo.Sup.Ct.R. 84.13. The point has not been preserved on appeal. We also deny plaintiff's motion for attorney's fees filed in this court.

To conclude, the judgment is reversed and the cause is remanded for retrial on Counts I, IV and VI against Baker Protective, Parashak, Rogers and Stewart. Plaintiff will be entitled to only one assessment of compensatory damages against all tortfeasors who are held liable. Plaintiff may, however, receive differing verdicts against the individual defendants for punitive damages. The judgment of the court in all other respects is affirmed. All motions filed in this court to strike or dismiss appeals and reserved for disposition after submission of the case are denied. Costs are assessed one-half against plaintiff and one-half against defendants Baker Protective Services, Inc., Parashak, Rogers and Stewart.

PUDLOWSKI, P. J., and GUNN, J., concur.