Alice MOORE, Appellant,

v.

CREDIT INFORMATION CORPORA-
TION OF AMERICA, Appellee.

No. 81–1766.

United States Court of Appeals,
Eighth Circuit.

Jan. 29, 1982.

Claude Hanks, St. Louis, Mo., for appel-
lant.

Lashly, Caruthers, Thies, Rava & Hamel, A Professional Corp., John H. Lashly, James J. Hennelly, St. Louis, Mo., for appellee.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and STEPHENSON, Circuit Judge.

PER CURIAM.

Alice Moore, appellant herein, appeals from the order of the district court [1] directing a verdict in favor of defendant Trans Union Credit Information (Trans Union), a credit reporting agency. For the reasons stated below, we affirm the judgment of the district court.

Moore originally brought this civil action against Trans Union in the Circuit Court of the City of St. Louis. Upon defendant's motion, the cause was removed to the United States District Court for the Eastern District of Missouri pursuant to the provisions of 28 U.S.C. § 1441. Jurisdiction was based on diversity of citizenship. Missouri law governs this controversy.

Moore's amended petition sought actual and punitive damages from Trans Union for damages she alleged she sustained because Trans Union maliciously provided slanderous and libelous information regarding her credit status to creditors. Trans Union raised the defense of truth and privilege. The essential facts are as follows.

On or about March 23, 1978, Alice and her husband Michael Moore obtained a divorce in the Circuit Court of St. Charles County, Missouri. During their marriage the couple had incurred several joint charge account debts which by the terms of the dissolution decree Michael Moore agreed to assume; he also agreed to hold Alice Moore "harmless" on such accounts. Neither Trans Union nor the creditors were informed, at that time, as to the terms of the dissolution decree concerning the joint debts.

After the divorce, Alice Moore sought to open a charge account in her own name but was rejected as a bad credit risk. She thereafter went to Trans Union's offices and upon her request was provided with a copy of her credit report by a Trans Union employee. The report included information on the joint charge accounts which Michael Moore had agreed to assume under the terms of the dissolution decree. She explained to the employee that the credit report included information concerning her ex-husband's credit rating and attempted to show the employee a copy of the dissolution decree. The employee explained that a divorce made no difference to credit ratings on joint accounts obtained prior to the divorce. The employee further explained that the information contained in the report was fed into Trans Union's computer by Trans Union subscribers. The Trans Union employee stated, however, that she would look into the matter by contacting the subscriber who had supplied the information.

Following the above encounter, Alice Moore's attorney wrote a letter to Trans Union requesting that the information concerning the debts belonging to Michael Moore be deleted from Alice Moore's credit file because, by the terms of the dissolution decree, Alice Moore was not responsible for those debts.

Alice Moore subsequently applied for credit with another company, but again was rejected. Since that time, she has not attempted to make any major purchases.

At trial, testimony elicited on Moore's behalf from Barry Botruff, operations manager for Trans Union, revealed that Moore's attorney had in fact notified Trans Union by letter, in August of 1979, of the terms of the Moores' dissolution decree; however, at the time of trial only one account had been deleted from Alice Moore's credit report. Michael Moore's credit report had nothing listed on it. Botruff further testified that Trans Union had called one creditor to verify the accuracy of the information on one account and was informed that the account was indeed that of Alice Moore.

1. The Honorable John K. Regan, Senior United States District Judge, Eastern District of Missouri.

At the close of Moore's evidence Trans Union moved for a directed verdict, which was granted by the district court on June 29, 1981. Moore thereafter brought this timely appeal.

"Under both federal and Missouri law the standard for granting a motion for a directed verdict is the same." *Savage v. Christian Hospital Northwest*, 543 F.2d 44, 46 (8th Cir. 1976). In considering a motion for a directed verdict, the trial judge must view all of the evidence in the light most favorable to the party opposing the motion. *Farner v. Paccar, Inc.*, 562 F.2d 518, 522 (8th Cir. 1977). *Kennedy v. U. S. Construction Co.*, 545 F.2d 81, 82 (8th Cir. 1976). If when viewed in this light the evidence is such that reasonable people could differ in finding that the movant should prevail, the court should not grant the motion. *Farner v. Paccar, Inc.*, 562 F.2d at 522. With these standards in mind, we agree that the directed verdict for Trans Union was appropriate.

Counsel for defendant correctly points out that under Missouri Approved Instructions (M.A.I.) 23.06(2) and 23.10(2) [2] Alice Moore was required to prove the following elements which are essential to a libel or slander case:

1. a libelous publication or slanderous statement;

2. the statement was false;

3. the defendant knew the statement was false or had reckless disregard for whether it was true or false at a time when there was serious doubt as to the truth;

4. plaintiff was exposed to hatred, contempt, or ridicule;

5. the statement was read or heard by the public; and

6. plaintiff's reputation was thereby damaged.

In the instant case the evidence clearly failed to establish that the alleged defamatory statements contained in the credit report were indeed false. It was undisputed that the accounts contained in the report were joint accounts of Michael and Alice Moore which both parties had initially agreed to be responsible to pay. In spite of the terms of the couple's decree of dissolution, a debtor cannot unilaterally assign his or her share of a debt to another and be relieved of the joint responsibility of a debt without the consent of the creditor. *See generally*, 6 Am.Jur.2d *Assignment* § 9 (1963 & Supp. 1981). Neither Alice nor Michael Moore obtained the consent of their creditors prior to entering into the terms of their decree of dissolution, which would have been necessary to effect a novation of the joint obligations to ones for which the husband is the sole debtor. Consequently, Alice Moore was factually still responsible for the joint debts with her ex-husband. Under these circumstances, the information contained in the credit report was substantially true. If the facts stated are true, defendant has a complete defense to a claim for defamation. *Brown v. Biggs*, 569 S.W.2d 760 (Mo.App.1978); *Turnbull v. Herald Company*, 459 S.W.2d 516 (Mo.App. 1970); *Pulliam v. Bond*, 406 S.W.2d 635 (Mo.1966). In such a case no defense of privilege is necessary. *Id.* "In defending on the basis of truth, it is not necessary that the precise facts stated in the [report] be literally true." *Brown v. Biggs, supra* at 762. "Slight inaccuracies of expression are immaterial if the defamatory charge is true in substance." *Kleinschmidt v. Johnson*, 183 S.W.2d 82 (Mo.1944).

Assuming, *arguendo*, the falsity of the information in the report, we conclude that the evidence presented was also insubstantial on the issue of malice, which is

2. M.A.I. 23.06(2) and 23.10(2) are used here rather than 23.06(1) and 23.10(1) because defendant here would be entitled to a qualified privilege. (*See* comments following instructions.) It is recognized in Missouri that reports of credit reporting agencies, if furnished in good faith to one having a legitimate interest in the information, are subject to a qualified privilege and ordinarily are not subject to an action for defamation. *Minter v. Bradstreet*, 73 S.W. 668, 679–80 (Mo.1903). A plaintiff may overcome a defense of qualified privilege by proving that the defendant published the defamatory statement with malice. *Id.; Perdue v. Montgomery Ward & Co.*, 107 S.W.2d 12 (Mo.1937).

required in order to overcome the qualified immunity provided to Trans Union.

Accordingly, we affirm the judgment of the district court.