## THE STATE v. E. T. PATE, Appellant.

Division Two, July 5, 1916.

1. EMBEZZLEMENT: Instruction: Unlawful Conversion: Criminal Intent. It is not necessary, in a prosecution for embezzlement, that the instruction purporting to cover the offense specifically mention the element of intent, provided its terms are otherwise sufficient to include in a general way all the elements essential to a commission of the act forbidden; but an instruction which merely requires the jury to find that de-

State v. Pate.

fendant "did unlawfully convert" to his own use certain money is not sufficient to authorize a verdict of guilty, since the term "convert" does not imply criminal intent, and the term "unlawfully" does not add to its meaning.

2. ———: Conversion: Defined. Every unauthorized taking of personal property, and all intermeddling with it, beyond the extent of the authority conferred, in case a limited authority has been given, with intent to so apply and dispose of it as to alter the condition or interfere with the. owner's dominion, is a conversion; and (except equitable conversion) most acts of conversion are unlawful. So that there may be an unlawful conversion which does not amount to embezzlement, because no criminal intent is present.

3. ———: ———: Designed to Cover Whole Case: Error Cured by Defendant's. An instruction for the State in a prosecution for embezzlement designed to cover the whole case which is erroneous because it omits the element of criminal intent, is not cured by one given for defendant.

4. ———: From Bank: Crediting Deposits to Self. When money is deposited in a bank and is mingled with its general funds it becomes the property of the bank, and thereby the relation of debtor and creditor arises between the bank and the depositor; and when the cashier without authority increases the overdrafts of a depositor or appropriates money which has been deposited by others by crediting it, not to them, but to himself, his acts constitute embezzlement of money belonging to the bank, and not that of private individuals.

5. ———: ———: Evidence: Switching Credits. Evidence that the cashier of a bank "switched" and transferred money from the account of an individual deposit( ~ to his own account is competent as evidence of embezzlement from the bank, since it tends to disclose the methods and means by which he endeavored to cover and conceal his acts of conversion, and likewise competent as tending to show the fraudulent and felonious intent necessary to a commission of embezzlement from the bank.

6. ———: ———: Overdrafts: Instruction: Comment on Evidence. An instruction offered by defendant, a cashier, declaring that the charge of embezzlement of the bank's money could not be sustained by proof that individual accounts had been falsified by false entries showing overdrafts against individual depositors, should be refused, because they single out certain isolated facts and give them undue prominence. Besides, such facts are material and competent as tending to establish criminal intent.

7. **EVIDENCE: Conclusions from Admissions.** A witness should not be permitted to state his inferences and conclusions as to what defendant meant by statements and admissions made to him.

Appeal from Shannon Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*L. B. Shuck* and *Sebree & Orr* for appellant.

(1) The evidence on the part of the State is insufficient to support a verdict of guilty under a charge of embezzlement of money. There is no evidence that defendant embezzled the sum charged, or any sum at any time. State v. Mispagel, 207 Mo. 557; State v. Martin, 230 Mo. 680; Hanna v. Insurance Co., 241 Mo. 400; State v. Moreaux, 254 Mo. 398; State v. Castleton, 255 Mo. 201; State v. Hamilton, 263 Mo. 300. (2) Instruction No. 2 given on behalf of the State is erroneous, in that it omits the necessary elements of the offense of embezzlement. It fails to require the jury to find that the defendant with a felonious or fraudulent intent converted the money of the bank to his own use, and such requirement is not contained in any other instruction given. State v. Cunningham, 154 Mo. 161; State v. Schilb, 159 Mo. 130; State v. Obuchon, 159 Mo. 256; State v. Rigall, 169 Mo. 659; State v. Lentz, 184 Mo. 223; State v. White, 237 Mo. 208. (3) The court committed error to the prejudice of the defendant by refusing instruction No. 1 requested by the defendant. Because the State was permitted to read to the jury several depositors' accounts, showing false entries in red, indicating that those accounts were overdrawn. And defendant's contention was throughout, that these did not furnish proof of the charge of embezzlement of money. See cases under point one. (4) The court also committed error in refusing instruction No. 2 asked by the defendant, because it correctly states the

law, and it was necessary that the jury be cautioned against erroneous views from the reception of these book accounts. If these accounts were competent for any purpose they were competent to show (1) that on the dates named in the information defendant received money of the value of $30 or more or (2) to show intent in connection with other proof of taking money. But these accounts did not contain a single date which corresponded with dates charged. There was no evidence to show the *corpus* of the crime charged and hence these accounts were not even evidence of intent. (5) The court erred in admitting the testimony of Hal Woodside relative to the conversation with defendant about the accounts of Robert Boram, what he inferred, and what was meant in reading from his notes.

*John T. Barker,* Attorney-General, and *Thomas J. Higgs,* Assistant Attorney-General, for the State.

Instruction No. 2 is a proper instruction. This instruction follows the statute, Sec. 4550, R. S. 1909. It is true, as contended by the appellant, that at common law there was no crime known as embezzlement, and it must necessarily follow that a complete description of such crime is set forth by the statute. The court will notice that the statute is in the disjunctive, and that if any officer, agent, clerk, servant, or collector of any company shall embezzle, there has been a crime committed, or if he shall convert to his own use, as set forth in the above instruction, a crime has been committed, or if he shall take, make way with or secrete with the intent to embezzle or convert to his own use, separate crimes have been committed, if the disjunctive is noticed. The statute does add the words, "without the assent of his master or employer," and the words "without the assent of such bank" are to be found in this instruction.

REVELLE, J.—After due preliminary proceedings the prosecuting attorney of Shannon County filed in the circuit court of that county his duly verified information, consisting of fifteen counts, and charging the defendant in certain counts thereof with embezzlement from the Bank of Birchtree, and in others with falsifying the records of said bank with intent to defraud. The counts as to the falsification of the records were dismissed, and defendant was tried on those charging embezzlement. He was convicted on the third count, which charged the embezzlement of $600 on the 19th day of June, 1911, and his punishment was fixed at imprisonment in the penitentiary for a term of two years.

Because of the numerous counts the evidence extends over rather broad fields, and on the part of the State discloses that during the years 1911-12 defendant was cashier of the Birchtree State Bank, which was organized sometime in the year 1905. On August 28, 1913, the State Bank Examiner, in the course of his duties, made an examination of the bank, which disclosed irregularities and discrepancies and a financial impairment of $14,000. This shortage, or at least a portion thereof, had been covered up and concealed by means of false entries, which defendant admitted he had made upon the books of the bank. This was done by failing to credit to the account of the depositors the correct amount which he deposited, the same being transferred and credited upon the books to the account of the defendant. In some instances no record was made of the deposit, but the money was directly appropriated by the defendant to his own use. In numerous cases the books disclosed that certain patrons and depositors of the bank were overdrawn in their accounts, when in truth and fact the bank was indebted to them, and, instead of the books disclosing a shortage in their account, they should have shown a

credit, ranging in various sums. For instance, and according to the admissions of the defendant, the sum of $465.45 had been "switched" from the account of Andrew Asp to the account of the defendant; the account of the Birchtree School District showed an overdraft of $54.51, and defendant admitted that he had taken $600 from this account; the bank's records disclosed an overdraft of Robert Boram in the sum of $724.12, and defendant admitted that he himself was responsible for $380 of the alleged overdraft; from the account of W. N. Bradford, Pate had transferred to his own account $485.49; and from the account of Mary E. Stewart the sum of $600. These are but instances of the course and system of the defendant, and are sufficient for the purposes of this review.

Upon being confronted with the disclosures which the official examination made, the defendant at first insisted that the bank examiner was mistaken, and that the discrepancies and differences appearing between the entries on the books and the true facts could be consistently explained. Later, however, he admitted substantially that the books were incorrect and that he had transferred to his own account and had used the money of the various persons who had made deposits with the bank, and further that if allowed time he would pay to the bank the amount of his shortage.

On the part of the defendant the evidence tended to show that he bore a good reputation in the community in which he then lived and had lived at former times. He himself testified and denied that he had ever converted to his own use any of the money belonging to the bank.

Such other facts as are deemed important will be referred to in the opinion.

I. The assignment first invoking our attention is that instruction No. 2 is erroneous, in that it does not require the jury to find that defendant *feloniously or fraudulently converted* the money without the assent of the owner. The instruction, omitting parts immaterial here, reads:

**Instruction: Criminal Intent.**

"And while acting as such cashier did then and there unlawfully convert to his own use any of such money belonging to such bank in any sum to the amount of thirty dollars or more without the assent of such bank, then you shall find defendant guilty," etc.

It will be noticed that the instruction does not use the term "embezzle," nor does it require that the act of conversion be *felonious or fraudulent,* or be done with a *felonious or otherwise fraudulent* intent. Since the statute upon which the indictment is predicated does not couple with the prohibited act any *specific* intent, but makes the commission of the act itself the offense (State v. Lentz, 184 Mo. 223; State v. Larew, 191 Mo. 192), it was unnecessary that the instruction purporting to cover the offense specifically mention the element of intent, provided its terms were otherwise sufficient to include, in a general way, all the elements essential to a commission of the act forbidden. We do not mean by this that a felonious or otherwise fraudulent intent is not a necessary element of the offense, but that in the general instruction it need not be specifically mentioned, provided the instruction properly covers the prohibited act itself, but to do this, that is, to cover the offense of criminal conversion such terms must be used as will include the element of criminal intent, and forbid a conviction in its absence.

The instruction under consideration merely requires the jury to find that the defendant *unlawfully converted* the property without the assent of the

owner. The term "convert" does not imply any criminal intent. It is defined in Black's Law Dictionary, p. 267, as follows: "An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights." It is said that every unauthorized taking of personal property, and all intermeddling with it, beyond the extent of authority conferred, in case a limited authority has been given, with intent to so apply and dispose of it as to alter the condition or interfere with the owner's dominion, is a conversion. [Laverty v. Snethen, 68 N. Y. 522; Field v. Sibley, 77 N. Y. Supp. 252; Watt v. Potter, 29 Fed. Cases, 438; Railroad v. Lawson, 88 Ky. 496; Abrahams v. Southwestern R. R. Bank, 1 S. C. 441.] A wrongful intent is not an essential element of a conversion. It is enough that the rightful owner has been deprived of his property by some unauthorized act by another assuming dominion or control over it. [Klein v. Cohen, 127 N. Y. Supp. l. c. 174, 142 App. Div. 500; Ferrera v. Parke, 23 Pac. l. c. 885; Pease v. Smith, 61 N. Y. 477; Trust Co. v. Tod, 170 N. Y. 233; Mohr v. Langan, 162 Mo. 474; Velzian v. Lewis, 16 Pac. 631.]

There can be conversions under such circumstances as to not constitute a crime, and the term "unlawful," as used in the instruction, does not add to its meaning. In fact, most acts of conversion (equitable conversion excepted) are unlawful, because in violation of civil rights of others, although many of them are committed under an honest belief of right, and with no criminal intent. Such are not criminal, and yet this instruction makes no distinction.

We are enjoined by section 8057, Revised Statutes 1909, to give to words and phrases their plain or ordinary and usual sense, and with technical phrases having a peculiar and appropriate meaning in law to give

meaning according to their technical import. The term "embezzle" is not synonymous with the term "convert," but is synonymous with the term "fraudulently convert." [Spalding v. People, 172 Ill. 40; Metropolitan Life Ins. Co. v. Miller, 71 S. W. 921; Teston v. State, 39 So. 787.]

As heretofore stated, this instruction does not use the terms "embezzle" or "fraudulently convert," but merely the words "unlawfully convert." Had it used the word "embezzle" in connection with the word "convert," it is our opinion that it would have been sufficient, particularly had such words been defined in other appropriate instructions. [State v. Burgess, *ante*, p. 407.] This subject has received the attention of this court on former occasions, and in State v. Cunningham, 154 Mo. 1. c. 178-9, it was said:

"A much more serious question is with respect to the failure of the instruction to tell the jury that in order to convict the defendant they must believe from the evidence that he converted the money to his own use without the assent of McLemore with a felonious or fraudulent intent to deprive him thereof. The State, however, contends that the only intent required by the statute is that the defendant should have intended to convert the money to his own use without the assent of his principal, and that if he unlawfully did so he is guilty under the statute. There was no such crime as embezzlement at common law; it is purely a statutory offense, and as to such offense, it is said, 'There must be an evil intent, though the statute is silent on the subject.' [Bishop's Criminal Law (6 Ed.), sec. 345.] So in 10 Am. & Eng. Ency. Law (2 Ed.), 996, it is said: 'To constitute embezzlement, it is necessary that there shall be a criminal intent. Most of the statutes, by the use of various terms, expressly require this. Even when they do not, the necessity for such an intent is to be implied. There must be, as in larceny, a fraudulent intent to deprive

the owner of his property and appropriate the same.'
[Eilers v. State, 34 Tex. Crim. 344.] The word un-
lawfully where used in the instruction does not sup-
ply the word felonious, or the words fraudulently,
etc., for while defendant may have unlawfully con-
verted the money to his own use, it does not neces-
sarily follow that he did so with a felonious or fraud-
ulent intent, and unless he did so with such intent .he
is not guilty of embezzlement, although the statute
does not in express terms require that there shall be
a criminal intent. [State v. Reilly, 4 Mo. App. 392.]
Many things are unlawfully done ˙ which are not
crimes, because the criminal intent is wanting.''

And in State v. Schilb, 159 Mo. l. c. 140, the court
said:

''The State's fourth and fifth instructions are
challenged upon the ground that they omit to require
the jury to find any fraudulent intent on the part of
defendant in converting either the money or property
of Harris to his own use. It is well settled that no
one can be convicted of felony in this State in the
absence of an intent to do a criminal act (State v.
Noland, 111 Mo. 473; State v. Cunningham, 154 Mo.
161), but such intent in case of embezzlement may
be inferred from a felonious or fraudulent conver-
sion. In 2 Bishop's New Criminal Law, secs. 372, 373,
379, it is said: 'The gist of common-law larceny is
the felonious ''taking'' of what is another's, with the
simultaneous intent in the taker . of misappropriating
it; but in the statutory embezzlement there is no
felonious taking, for the thing comes to the servant
by delivery, either from the master or a third per-
son, so that the question now is, by what act, after it
is received, does the servant commit the embezzle-
ment? The rule of law appears only indistinctly in
the books. Still, we may infer from the authorities,
and from the reasons inherent in the question, that if
the servant intentionally does with the property under

his control what one must intend to do with property taken to commit larceny of it, he embezzles it, while nothing less is sufficient; or, assuming the needful criminal intent to exist, he must and need only do what in our civil jurisprudence is termed "conversion," defined to be any dealing with the thing which, impliedly or by its terms, excludes the owner's dominion. To illustrate: if the servant instead of delivering the property to his master or another, as required by his duty, pledges it for his own debt, or runs away with it, or neglects or refuses to account for it, or otherwise wrongfully diverts its course towards its destination to make it his own, he embezzles it. The felonious or otherwise fraudulent intent is an essential element, yet if a man commits the act of embezzlement the presumption is that he means to embezzle.' [Spalding v. People, 172 Ill. 1. c. 55.]

"For these reasons the instructions are erroneous and should not have been given as they were."

These cases are cited in State v. Rigall, 169 Mo. 659, and the doctrine therein announced again approved and applied. As early as Witt v. State, 9 Mo. 1. c. 673, SCOTT, J., said:

"It will thus be seen from what has been observed, that there cannot be a larceny without a felonious intent. That the taking the personal goods of another without this intent, may be a trespass, but it cannot amount to larceny. The prisoner, then, might have done every act supposed by the instruction of the court without being guilty of a felony. The instruction defined a trespass, and not a larceny, and it was error to have told the jury that the commission of the acts mentioned in it, rendered the prisoner guilty of larceny."

Because of the failure to include the element of criminal intent the court in the case just quoted from declared that the instruction defined trespass, but not larceny, and so with the instruction in the instant case,

we may say that it defines a civil conversion, as distinguished from a criminal or fraudulent conversion. The only distinction between trespass and conversion is that trespass is a mere seizure or unlawful handling of the property, while conversion is characterized by usurpation of ownership.

It is urged, however, by the State that the error in instruction number 2, is cured by instruction number 6, but to this we do not agree. In the first place, it will be observed that instruction number 2, purports to cover the entire case, and with such an instruction this court holds, not only in criminal but civil cases as well, that it must include all of the essential elements. It is, of course, different with instructions dealing only with some particular element or phase of a case. An examination of instruction number 6, discloses that it was not intended to aid or supplement instruction number 2, and that it relates only to a matter which the court declares constitutes no defense to the charge. It is our opinion that it in no manner explains or supplies the defects in instruction number 2.

II. Defendant next insists that the evidence in this case is insufficient to sustain the verdict, but we do not deem it necessary to burden the opinion with any lengthy discussion of that question, as the testimony relative to his acts in connection with the money which had been deposited not only by Robert Boram and A. J. Lang, but also by others, is sufficient to establish the case against him. These acts did not constitute an embezzlement of money belonging to the individual depositors, but money of the bank, because it is well-settled that when money is deposited in a bank and is mingled with its general funds it becomes the property of the bank, the transaction creating the relation of debtor and creditor. The evidence of his "switching" and transferring money

from the account of an individual depositor to his own account was competent, as disclosing the means and method to which he resorted in endeavoring to conceal and cover his acts of conversion. They were likewise competent as showing the fraudulent and felonious intent necessary to a commission of the alleged crime.

The instructions offered by defendant, and refused by the court, declaring that the charge of embezzlement could not be sustained by proof that individual accounts had been falsified by entries showing overdrafts, were properly refused, because they single out certain isolated facts and give them undue prominence. These facts, as heretofore pointed out, were material and competent as tending to establish certain elements of the offense, and the instruction requested would have been calculated to confuse rather than to aid. This is particularly true in the instant case, because of what seems to have been defendant's theory that he did not embezzle from the bank, but, if at all, from the accounts of the depositors, and that the evidence on the whole tended to show only a falsification of the records, when, as above stated, it tended to show the offense charged.

Objections are also made to certain testimony given by the bank examiner, it being said that he was permitted to state as facts his own inferences and conclusions as to what defendant meant when he made certain statements in his presence. Upon a retrial of this cause the State should be permitted to detail in evidence the statements made by defendant in the nature of material admissions and confessions, but the witnesses should state only what he said, and not be permitted to testify to their own opinions, inferences and conclusions.

Because of the error in instruction No. 2 the judgment is reversed and the cause remanded. All concur.