Linda PERKINS, Linda Perkins, Personal Representative of the Estate of Marvin Perkins, Deceased, Plaintiffs–Appellants,

v.

SUR-GRO FINANCE, INC., Respondent,

v.

FARMERS COOPERATIVE GRAIN & SEED CO., Intervenor–Appellant.

No. WD 39865.

Missouri Court of Appeals, Western District.

Aug. 29, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1989.

Application to Transfer Denied Nov. 14, 1989.

Jerold L. Drake, Grant City, for plaintiffs-appellants.

George A. Pickett, Plattsburg, for respondent.

Allan D. Seidel, Trenton, for intervenor-appellant.

Before KENNEDY, C.J., and TURNAGE and BERREY, JJ.

BERREY, Judge.

The plaintiffs-appellants, Linda Perkins and Linda Perkins as personal representative of the estate of Marvin Perkins, deceased, sued the defendant-respondent, Sur–Gro Finance, Inc., for damages for wrongful execution of crops they owned growing on lands they leased. Farmers Cooperative Grain & Seed Co. intervened in the action, requesting a determination by the court as to its security interest in the crop which was the subject of litigation. The jury found for the plaintiffs-appellants, awarding $6,000 in actual damages and $30,000 in punitive damages. The trial court entered a judgment notwithstanding the verdict taking away the punitive damage award. The trial court also found that the intervenor, Farmers Cooperative, had a validly perfected security interest but, by virtue of having received possession of a portion of that crop sufficient to satisfy its lien interest and then having subsequently voluntarily parted with possession of it, its security interest had been waived.

Plaintiffs-appellants appeal the judgment, claiming that the trial court erred in sustaining Sur–Gro's motion for judgment notwithstanding the verdict for that portion of the jury verdict granting punitive damages to appellants. Intervenor, Farmers Cooperative, appeals, claiming that the trial court made an incorrect determination that it had waived its security interest in the crop.

On December 15, 1982, plaintiff Linda Perkins and her husband Marvin (now deceased) leased a 160 acre farm in Harrison County, Missouri, from the owners of the farm, Kenneth and Icel Thompson. On September 18, 1984, Sur–Gro obtained a judgment against Clarke Perkins in Clinton County, Missouri, in the principal sum of $13,717.90 plus accrued interest in the amount of $5,421.45. Clarke Perkins is the step-son of Linda Perkins and the son of Marvin Perkins.

Upon obtaining this judgment, the Credit Manager of Sur–Gro, Nancy Brockman, found a U.C.C. financing statement filed with the recorder of Deeds of Harrison County, Missouri, in which Clarke Perkins granted a security interest to Farmers Cooperative described as, "Crops: ¼ of 1985 corn crop grown on 150 acres of land leased by the Debtor from Kenneth & Icel Thompson, in Harrison County, Missouri." After discovering this statement, Brockman contacted the local ASCS office to see

if Clarke had signed up for any programs and to find out what his share actually was. She was advised that Clarke Perkins had a 100 percent share. On October 4, 1985, she went to the sheriff's department in Harrison County to make an appointment to go out to the field and levy on the crop. The sheriff sent one of his deputies to the field with Brockman and he posted the field in four or five different locations. Clarke was then served with notice of the levy that same day.

Shortly after he was served, Clarke contacted Jim Rakestraw, Sur–Gro's general manager, and told Rakestraw that while he was the owner of the crop, he had mortgaged one quarter of it to Farmers Cooperative and three quarters of it to Tri–County Fertilizer and Supply Corporation (who had not made a U.C.C. filing on the mortgage). Clarke asked Rakestraw for a figure as to what they would take in cash for the debt. The following morning, Rakestraw telephoned Clarke Perkins but they were unable to come to an agreement. Rakestraw told Clarke that they were going to proceed and harvest the crop. At no time did Clarke inform him about the lease or that any other party had an interest in the grain.

On October 5, 1985, the Sheriff of Harrison County, John Findley, received a copy of the lease of the disputed property. The lease showed Marvin and Linda Perkins to be the tenants and Kenneth and Icel Thompson to be the landowners and lessors of the property. Sheriff Findley notified Sur–Gro's attorney about the lease, who in turn discussed the lease with Rakestraw. It was decided that the execution should proceed, because as Rakestraw testified, "It became obvious, looking at all of the documents together, that if Marvin did rent the land from the Thompsons that he obviously subleased it to Clark [sic] because he was giving Clark [sic] the right to give mortgages and the ASCS Office also had Clark [sic] down as a 100 percent owner of the crop."

On October 8, 1988, Sur–Gro, acting pursuant to the levy, began to harvest the grain. Sur–Gro harvested approximately 2,562.5 wet bushels of corn that had a dry weight of approximately 2,326 bushels. The grain was taken by the Sheriff to the MFA Elevator in Bethany, Missouri, to be weighed, graded and tested. It was then taken to the Sur–Gro facilities in Weston, Missouri, for storage. At the time of the trial, the grain was still stored in Weston.

On October 9, 1985, Linda and Marvin Perkins filed a two-count petition against Sur–Gro seeking injunctive relief and damages for Sur–Gro's harvest of the corn. Sur–Gro filed a counterclaim seeking damages for harvest of the crop while it was under levy. (Marvin had harvested the remainder of the corn on October 31, 1985.) Farmers Cooperative filed a petition to intervene on April 20, 1987, claiming a lien on the crop, and on May 11, 1987, the court ordered that it be allowed to intervene. The case was tried before a jury in Mercer County on June 10 and 11, 1987. The jury awarded $6000 in actual damages and $30,-000 in punitive damages to the plaintiffs-appellants. The trial judge took the punitive damages away, entering a judgment notwithstanding the verdict.

The Supreme Court accepted transfer of this matter after opinion and subsequently retransferred the cause for reconsideration in light of *Burnett v. Griffith,* 769 S.W.2d 780 (Mo. banc 1989).

■ Plaintiffs-appellants contend that the trial court erred in entering a judgment notwithstanding the verdict as to that portion of the jury verdict granting punitive damages. In review of the trial court's action in entering a judgment notwithstanding the verdict, the evidence is viewed in the light most favorable to the party against whom the judgment was entered, giving that party the benefit of all reasonable inferences drawn therefrom. *Hinton v. State Farm Mut. Auto. Ins. Co.,* 741 S.W.2d 696, 700 (Mo.App.1987). Furthermore, sustaining a motion for judgment notwithstanding the verdict should only be done in those cases where all of the evidence and the reasonable inferences to be drawn from that evidence militate so strongly against plaintiffs' position that there exists no room for reasonable minds

to differ. *Bizzle v. Enterprise Leasing*, 741 S.W.2d 84, 85 (Mo.App.1987).

■ We review the issue of punitive damages in the instant case in light of *Burnett v. Griffith, supra.* The Supreme Court in *Burnett* reexamined the punitive damage standards as they apply to intentional torts. The Court in *Burnett* looks to the Restatement (Second) of Torts to examine the concepts embodied therein and adopts the language of the Restatement in formulating new MAI 10.01. Essentially, "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." Restatement (Second) of Torts, section 908(2)(1979); *See also* MAI 10.01. *Burnett* dealt with the intentional tort of assault. Its purport and rationale, however, encompass all intentional torts except perhaps the distinctive malicious prosecution tort. *Burnett v. Griffith, supra,* 769 S.W.2d at 786, 789.

Reviewing the evidence adduced in the instant case in light of that standard makes it obvious that appellants' contentions cannot be supported. Appellants point to some facts which they claim support their contention. They include the fact that Marvin and Linda Perkins had leased the land since 1982 and made rental payments thereon. They furnished machinery and fuel to plant the crops. Marvin had planned the planting, deciding what crop to plant and what fertilizer to purchase. This, however, does not address the issue of what Sur–Gro knew when it took the action it did and it is this knowledge upon which the punitive damage award must be grounded.

Sur–Gro had a judgment against Clarke. The financing statement that Brockman discovered listed Clarke as the debtor and claimed as collateral a one-fourth interest in the crop grown upon land leased by Clarke. The ASCS records also reflected Clarke's ownership. At the time of the levy there was nothing to suggest that anybody but Clarke had rights in the crop.

■ After the levy and before the harvest, Rakestraw spoke with Clarke who asserted his ownership and bargained for a settlement. No mention of the lease was made. It is this lease to which appellants' point as giving Sur–Gro knowledge of other potential ownership rights in the crop. That Sur–Gro harvested after knowing of the lease is the crux of the appellants' complaint. The lease was delivered to Sheriff Findley. Although Sur–Gro was orally informed of the lease there is absolutely no evidence that it ever received a copy of the lease. Thus, Sur–Gro's actions cannot be said to be violative of the teachings of *Burnett.* There is simply no showing of an evil motive or reckless indifference to the rights of others, given the facts and circumstances of the instant case. Therefore, the action of the trial court in granting a judgment notwithstanding the verdict on the issue of punitive damages is affirmed.

Farmers Cooperative Grain & Seed Co., intervenor-appellant, challenges the actions of the trial court in regard to their security interest in the corn crop which was the subject matter of the case. The trial court stated:

> The Court further finds that Intervenor, Farmers Cooperative Grain & Seed Company has a validly perfected security interest to the extent of twenty-five per cent (25%) of the 1985 corn crop, which the Jury has found and determined to be owned by Marvin L. Perkins and Linda Perkins but that by virtue of having receiving [sic] possession of a portion of said crop sufficient to satisfy their lien interest and having subsequently voluntarily parted with possession of the 1985 corn crop, they have thereby waived their security interest and are no longer a secured creditor with respect thereto.

The trial court held that Farmers Cooperative had a perfected security interest in one-quarter of the 1985 corn crop. This is not challenged by Sur–Gro or by the Perkins. Indeed, Marvin Perkins, deceased, in testimony presented by tape recording [1]

---

1. The tape consisted of the testimony of Marvin Perkins in a prior proceeding in Division II of the Harrison County Circuit Court.

made it clear he had given Clarke his authority to mortgage the crop:

Q. But your son has authority from you to mortgage all the grain on there and sign for all of the federal government programs and receive all of the money from that property, is that correct?

A. That's my understanding; yes.

Clarke did place a lien on the crop in question, granting a security interest on one-quarter of the crop to Farmers Cooperative. This lien was perfected by a U.C.C. filing. He also mortgaged three-quarters of the crop to Tri–County Fertilizer and Supply Corporation but it did not perfect its lien. The evidence also revealed that at the time of trial the amount due on the underlying note to Farmers Cooperative had been reduced from $32,000 to $11,072.80. The corn harvested by Sur–Gro was still in the Sur–Gro facilities in Weston, where it had been taken for storage, at the time of the trial.

Jeff Stroburg, the manager of Farmers Cooperative, testified that it received approximately 25,000 bushels of corn and 4,000 bushels of beans from *Marvin* Perkins from October 31, 1985, to November 2, 1985. The crop was received for the purpose of drying and was then sent elsewhere for storage. There was no evidence that any of this crop constituted a portion of the grain in Sur–Gro's possession which was the subject of the lawsuit or, indeed, that any of the crop received by Farmers Cooperative was subject to the lien. Thus, the trial court erred in finding that the security interest of Farmers Cooperative had been waived.

Admittedly, it is clear that where a mortgagee authorizes or assents to the sale of the mortgaged property by the mortgagor then the lien upon that property is discharged. *See Charterbank Butler v. Central Cooperatives Inc.,* 667 S.W.2d 463, 465 (Mo.App.1984). However, the circumstances of the instant case do not show the proper conditions for such a waiver. The crop in question, that harvested by Sur–Gro, was never in the possession of the lien holder at all. Thus, the trial court was totally without jurisdiction in its pronouncement that the lien had been extinguished as its order dealt with crops beyond the subject matter of the lawsuit.

Accordingly, Farmers Cooperative possesses a valid lien for one-quarter of Clarke's grain, including that in possession of Sur–Gro. That portion of the trial court's order holding that Farmers Cooperative no longer has a security interest in Clarke's grain is reversed. The cause is remanded for a determination of Farmers Cooperative's interest in the 2,326 bushels of stored corn held by Sur–Gro and its interest, if any, in the $6,000 in actual damages awarded to plaintiffs-appellants.

All concur.