Hershel **WALKER,**
**Plaintiff–Respondent,**

**v.**

**GATEWAY NATIONAL BANK,**
**Defendant–Appellant.**

**No. 57708.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 6, 1990.
Rehearing Denied Dec. 12, 1990.

Christopher Meaux Smith, James Edward Terry, St. Louis, for defendant-appellant.

Mark I. Bronson, St. Louis, for plaintiff-respondent.

CRANE, Judge.

Gateway National Bank appeals the portion of a judgment which awarded $10,000 punitive damages to its depositor Hershel Walker in a conversion action. We reverse.

On July 20, 1984, Hershel Walker [Walker], gave Boulch and Sons Construction [Boulch] a check for $6,120.21 drawn on his account with Gateway National Bank [Gateway]. On July 23, 1984, Boulch deposited this check in its account at United Missouri Bank [United]. Boulch's account was credited in the amount of $6,120.21. United's records showed that Boulch closed his account on August 28, 1984.

United presented the check to Gateway, through the relevant banking channels, for payment. Gateway dishonored the check for insufficient funds and informed Walker of this by written notice dated July 23, 1984. On the same day Walker deposited $7,000 into his account at Gateway. Walker's account was never charged for the check. Walker testified at trial that, after receiving the insufficient funds notice, he paid Boulch $6,120.21 in cash from money he had in a safe, which resulted in Boulch being paid twice. Boulch did not testify at trial.

Thereafter, Gateway returned the check to the Federal Reserve to be returned to United. The check was one of a series of checks lost by the Federal Reserve's computer system. Consequently, the check was never returned to United. United's account with the Federal Reserve was not debited, and the amount of the item was never charged back to Boulch's account. The Federal Reserve ultimately charged Gateway's account for the item.

In August, 1985, Gateway learned of the loss of the checks by the Federal Reserve and that the Federal Reserve had charged Gateway for those checks. Gateway determined that Walker's account had not been charged for the item that had been paid to Boulch. Gateway attempted to charge the $6,120.21 against the account, but the funds in that account were insufficient. Walker had $10,000.00 on deposit with Gateway as evidenced by a Certificate of Deposit due to mature in December, 1985. A series of communications commenced between Gateway and Walker. The first communication was a letter from Karen Coleman, Assistant Vice President of Gateway National Bank to Walker dated Au-

gust 9, 1985, which was read into the record as follows:

> During a routine audit of Gateway National Bank, checking the account, we discovered that your check dated the 20th of [sic] 1984 payable to Boulch and Son in the amount of $6,120.21 was paid but never charged to your account 58962–8, we apologize for any inconvenience this may have caused....

On November 26, 1985, a second letter was sent by Coleman to Walker:

> Dear Mr. Walker,
>
> On August 9th of 1985 we sent you a documentation and requested payment on the above referenced check. We have completed the further research you requested on this item. The United Bank of Missouri has informed us their customer Boulch and Son deposited and was given credit for the above mentioned check on July 23rd of 1984. Their records further show that Boulch and Son's account was never debited nor do they show ever receiving a charge back for this item. We are therefore requesting once again payment from you in the amount of $6,120.21. If you have any questions please contact me or Mr. James Harris our president at the above number. Thank you for a prompt attention to this matter.
>
> Sincerely yours,
>
> Karen Coleman, Assistant Vice–President.

That was followed by a third letter from another Gateway officer dated December 19, 1985:

> Dear Mr. Walker,
>
> On August 9th of 1985 and again on November 26th of 1985 we requested payment on the above mentioned check. We feel we have given you ample time to deposit sufficient funds to cover this item. Due to the fact that you have not done so we are today taking the amount from your matured Certificate of Deposit 1396 for $10,000. Enclosed please find our cashier's check 105337 in the amount of $3,879.79 which represents the difference. If you have any questions please do not hesitate to get in touch.

> Sincerely,
>
> Don Wohldmann

Coleman also sent Walker a letter she received from United dated November 18, 1985 stating that the $6,120.21 item was never returned and never charged back to the Boulch account.

Gateway removed the $6,120.21 from the Certificate of Deposit on December 19, 1985 and forwarded a cashier's check for the difference to Walker. Walker claimed that he never told the bank that it could take the $6,120.21 from the proceeds of the Certificate of Deposit. Gateway's president and vice-president both testified that he orally consented to this procedure. Gateway's vice-president testified to signature cards Walker had signed which gave the bank a right of set-off and that he had obtained the advice of the bank's legal counsel that the bank had a right of set-off.

Walker commenced this action in circuit court, seeking actual and punitive damages for conversion. The case was tried to a jury. At the close of the evidence the jury returned a verdict in favor of Walker, awarding him $6,120.21 as actual damages, $2,200.00 as interest, and $10,000.00 as punitive damages.

At oral argument of this appeal, Gateway announced it was abandoning its first point, which challenged the sufficiency of the evidence of the underlying cause of action for conversion. We therefore do not address the issues of whether a cause of action for conversion existed or whether there was sufficient evidence to submit it to the jury. *Emerson v. Mound City*, 26 S.W.2d 766 (Mo.1930).

■ Walker first argues that Gateway's remaining point relied on does not comply with Rule 84.04(d) V.A.M.R. This point states:

> The jury and trial court erred in failing to give proper consideration to the weight of the evidence wherein there was no proof of punitive damages.

This point does not state what action of the court is sought to be reviewed, much less wherein and why it is claimed erroneous. However, the brief is minimally adequate

in that there is substantial discussion of the submissibility of punitive damages in the argument. Walker was able to brief its response to Gateway's position. Since Walker was not prejudiced, we will review and determine this issue on the merits. *Salamy v. State Farm Fire and Casualty Co.*, 629 S.W.2d 653, 655 (Mo.App.1982).

In reviewing the submissibility of the issue of punitive damages, we review the evidence in the light most favorable to submissibility. *Chapman v. Duraski*, 721 S.W.2d 184 (Mo.App.1986). Punitive damages are appropriate only where the conduct of defendant is outrageous because of defendant's evil motive or reckless indifference to the rights of others. *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989).

Walker points to evidence which he claims supports his claim for punitive damages. This evidence includes testimony that Walker delivered funds to Gateway because he trusted Gateway and he was a good customer. These facts, however, do not relate to Gateway's state of mind or motive and are irrelevant to the issue of punitive damages. See, *Perkins v. Sur-Gro Finance, Inc.*, 778 S.W.2d 751, 754 (Mo.App.1989).

Walker also directs us to evidence that Gateway admitted that it removed funds from the Certificate of Deposit. Even though Walker refused to give Gateway written authorization, Gateway presented evidence that its employees were acting on the advice of counsel and with the good faith belief that Gateway had a right of set-off. This advice was in accord with the general rule that

> a bank may look to deposits in its hands for the repayment of any indebtedness to it on the part of the depositor and may apply the debtor's deposits on his debts to the bank as they become due * * *. [S]uch right grows out of the debtor and creditor relation subsisting between bank and depositor, and finds its basis in the right of setoff, and in the application of equitable principles.

*Adelstein v. Jefferson Bank and Trust Company*, 377 S.W.2d 247, 251 (Mo.1964), quoting C.J.S. Banks & Banking § 296, pp. 614, 615. When a party acts in good faith and in the honest belief that his act is lawful, he is not liable for punitive damages. *Walker v. Huddleston*, 261 S.W.2d 502 (Mo.App.1953).

Walker also directs us to the fact that Gateway's former president admitted on cross-examination that the funds represented by the Certificate of Deposit "belonged" to Walker. It is well settled that when money is deposited in a bank and is mingled with its general funds it becomes the property of the bank, the transaction creating the relation of debtor and creditor. *State v. Pate*, 268 Mo. 431, 188 S.W. 139, 142 (1916). The former president's apparent misstatement of the bank-depositor relationship cannot change the legal status of the ownership of the deposits.

Finally, Walker points to the fact that Gateway did not tell Walker that his insufficient funds check had been lost by the Federal Reserve. None of this evidence [1] rises to a level whereby Gateway's actions could be classified as outrageous. Walker adduced no evidence of an evil motive on the part of Gateway. The evidence did not establish ill will, grudge, or spite on the part of Gateway. See *Perry v. Dayton Hudson Corp.*, 789 S.W.2d 837 (Mo.App. 1990). Walker did not prove a reckless disregard on the part of Gateway for Walker's rights from which any evil motive can be inferred. *Burnett v. Griffith, supra*, 769 S.W.2d at 789.

The portion of the judgment which awarded punitive damages is reversed.

REINHARD, P.J., and STEPHAN, J., concur.

---

1. We do not consider matters which were either not admitted or were stricken from the record.