**CLAYTON X–RAY COMPANY,**
Appellant–Respondent,

v.

**PROFESSIONAL SYSTEMS
CORPORATION, Respondent–Appellant.**

No. WD 43583.

Missouri Court of Appeals,
Western District.

Aug. 6, 1991.

John E. Turner, Kansas City, for appellant-respondent.

P. Thomas Loughlin, Kansas City, for respondent-appellant.

Before KENNEDY, P.J., and
SHANGLER and ULRICH, JJ.

KENNEDY, Presiding Judge.

Clayton X–Ray Company was in the business of selling x-ray machines, x-ray film and chemicals used to develop the film to

doctors and hospitals. It entered into a contract for the purchase of a computer system from Professional Systems Corporation, including the machine itself and software for the management and control of Clayton X–Ray Company business operations.

The written contract, entitled "Agreement to Purchase" was actually signed by John Clayton, Clayton X–Ray's president, in February, 1983. He had had the contract in his possession, however, since March 15, 1982, and the computer system had been delivered to Clayton X–Ray in May, 1982, and was in use well before Mr. Clayton signed the purchase agreement.

The contract price was $42,800, including $32,800 for equipment and $10,000 for software. Clayton made a down payment of $4,280, and later, in mid–1982, paid $30,000. The $10,000 balance was never paid, and PSC recovered judgment on a counterclaim for that amount in this lawsuit.

After the installation of the equipment and part of the software, a PSC employee, over a space of two years, worked 1100 hours at the Clayton X–Ray premises in an effort to get the bugs out of the software and adapt it to Clayton X–Ray operations. In early 1984 PSC informed Clayton X–Ray that it would not work on the computer any more. Bugs continued to cause difficulties and in 1985 PSC began once more to work on the system to correct 119 bugs that had appeared. In a January, 1986, letter, PSC told Clayton X–Ray that most of the bugs had been fixed.

PSC did additional work on the computer from April 15, 1986, to July, 1986. In July, PSC wrote to Clayton that the situation had "moved past the bug-fixing phase into a standard support and possible modification-need phase." This letter also reminded Clayton X–Ray of its unpaid account of $11,628.06, which included $10,000 of the original purchase price.

Clayton did not pay its bill. PSC, unknown to Clayton, put into the computer system a lockup program which at a pre-set time, October 31, 1986, locked up the computer programs so that Clayton could not access its files. The message on the computer was "Call Professional Systems Corporation About Your Bill." Clayton hired a person who was able to unlock the system and give Clayton access to its files.

Clayton brought suit against PSC for damages due to PSC's alleged breach of express warranty and, in another count, for actual and punitive damages for conversion in its lock up of the computer programs.

PSC counterclaimed for $11,628.06, which included the $10,000 balance owing on the original contract, and $1,628.06 for other goods.

The jury returned verdicts in favor of Clayton and against PSC on the breach of warranty claim for $60,000 and on the conversion claim for $1,050 actual damages and $10,000 punitive damages. As noted above, the jury returned a verdict for $10,000 on PSC's counterclaim and judgment was entered therefor.

Both of the parties' motions for a new trial were overruled, and both parties have appealed from the judgment.

■ We first take up Clayton's appeal from the $10,000 judgment against it. Clayton says the court erred in refusing to admit in evidence of a letter dated February 16, 1982, from PSC to Clayton, to which was attached a "proposal summary." The proposal summary included the following language, which Clayton believes would have aided its defense against PSC's claim: "If we fail to successfully complete the three approval steps, you have the right to cancel your order. Your deposit will be returned, and you will have no further obligation." The proposal connected to the letter was not accepted by Clayton, and the contract ultimately entered into by the parties differed in several particulars from that proposed in the February 16 letter and attachments.

We do not decide whether the February 16 letter and the proposal summary were excluded by the parol evidence rule, as codified with respect to sales in Sec. 400.2–202, RSMo, but we hold Clayton suffered no prejudice from its exclusion. Under the language Clayton points us to, the buyer was to be excused from payment upon its

cancellation of the order. The buyer could cancel the order if three described approval steps were not successfully completed. There was never any cancellation of the order, no tender of the goods back to PSC, and there is no claim for rescission here. The equipment and the software were accepted and used; Clayton's breach of warranty damage claim proceeds upon the assumption that the goods were Clayton's property.

■ Clayton says further that the February 16 letter and proposal summary constituted the "published specifications as of the date of installation," with which, under the express terms of the warranty section of the parties' contract, the computer equipment was warranted to comply. The specifications contained in the proposal summary, if they were admissible under the parol evidence rule, would have had no bearing on the PSC claim against Clayton for the balance of the purchase price, they would be relevant only upon Clayton's breach of warranty claim against PSC, and Clayton does not appeal from the judgment in its favor and against PSC upon the breach of warranty claim.

We hold there was no error prejudicial to Clayton in the trial court's exclusion of the February 16 letter and proposal summary. PSC's $10,000 judgment against Clayton is affirmed.

■ We turn now to PSC's appeal from the $60,000 breach of warranty judgment, and the $1050 actual damages and $10,000 punitive damages judgment on the conversion claim. PSC says the verdicts are inconsistent and mutually destructive which give PSC $10,000 upon its contract claim against Clayton and also give Clayton damages upon its breach of warranty claim against PSC. This inconsistency—or rather the trial court's acceptance of the verdicts, and its failure to instruct the jury to deliberate further (MAI 2.06)—entitles it, says PSC, to a new trial.

When the verdicts were returned and their inconsistency suggested, PSC did not ask that the jury be instructed to deliberate further, and in fact objected to that course, PSC thereby waived any error based upon inconsistency of verdicts. *Douglass v. Safire,* 712 S.W.2d 373, 374 (Mo. banc 1986); *Holmes v. Drakey,* 759 S.W.2nd 610, 611 (Mo.App.1988). We do not, of course, hold the two verdicts were inconsistent and mutually destructive.

■ PSC says the evidence makes no submissible case of conversion, nor a submissible case for punitive damages on Clayton's conversion claim. PSC does not present any argument or authority for the statement that the evidence did not support the conversion submission. It argues, though, that the evidence does not show defendant's conduct was outrageous because of "defendant's evil motive or reckless indifference to the rights of others" in its lock up of Clayton's computer system. See *Walker v. Gateway Nat. Bank,* 799 S.W.2d 614, 617 (Mo.App.1990); MAI No. 10.01. If PSC is correct in this position, it would follow that the punitive damages verdict on the conversion claim was unsupported by the evidence.

We hold, however, that the evidence was sufficient for the submission of punitive damages. PSC had no legal right, or any colorable legal right, to lock up Clayton's computer system. PSC's president had told a PSC employee to take a disk to Clayton's place of business, to tell the people at Clayton that there were some program changes that needed to be done, but then to load the computer instead with instructions to lock up on October 31, 1986. The effect of the lockup was to prevent Clayton's access to the records of its business. Only by the fortuity of being able to enlist the aid of a former employee of PSC was Clayton able to regain access to the records of its business in fairly short order, and PSC's stratagem did not accomplish the intended paralysis of Clayton's business. This evidence made a submissible case for punitive damages.

The judgment is affirmed.

All concur.